**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

Santana Jade Cline,

                Case No. 2:13-cv-401

        Plaintiff,

     v.               Judge Graham

Mortgage Electronic Registration
Systems, Inc., et al.,

        Defendants.

<u>Opinion and Order</u>

Plaintiff Santana Jade Cline, proceeding *pro se*, brings this action relating to an alleged "fraudulent foreclosure." First Am. Compl., ¶ 1. Cline has filed suit against several defendants: Mortgage Electronic Registrations Systems, Inc. ("MERS"), MERSCORP Holdings, Inc., HSBC Bank, Ocwen Loan Servicing, and attorney Benjamin Carnahan. The complaint asserts numerous causes of action, including fraud, conspiracy, and violations of the Fair Debt Collection Practices Act ("FDCPA").

Defendants have moved to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants argue that this suit lacks merit and is merely the latest in a long series of frivolous litigation tactics employed by Cline in state court, bankruptcy court, and this Court to avoid being removed from her residence.

For the reasons stated below, the Court grants the motion to dismiss.

## I.    Background

The original complaint filed by Cline was against only defendant MERS. It alleged that Cline obtained a mortgage loan in the amount of $433,000 in April 2006 in connection with a residence in Dublin, Ohio. The complaint alleged that the mortgage lender was CBSK, which allegedly went defunct soon thereafter. After CBSK suspended operations, MERS allegedly attempted to assign the mortgage and promissory note and attempted to collect mortgage payments from Cline. According to the complaint, MERS had no authorization or right to assign the mortgage or to collect payments and it was unfair and unconscionable for MERS to attempt to do so. The original

complaint asserted claims against MERS under the FDCPA and the Ohio Consumer Sales Practices Act.  See 15 U.S.C. § 1692k; O.R.C. § 1345.09.

MERS moved to dismiss the original complaint on multiple grounds, including res judicata and statute of limitations.  Cline then moved for leave to amend, which the Court granted as being allowed as a matter of course under Rule 15(a)(1).

Cline's amended complaint added four defendants, 70 pages of allegations, and causes of action for conspiracy, fraud, misrepresentation, and unjust enrichment.  Many of the new allegations are presented as "facts" about the history of the mortgage industry in the United States.  Of the allegations that are specifically directed against a named defendant, Cline alleges the following: that after CBSK went defunct, Ocwen improperly used MERS to assign the mortgage to HSBC in April 2007; that attorney Carnahan prepared false assignment documents for his clients; that Ocwen filed a foreclosure action on behalf of HSBC in the Franklin County Court of Common Pleas; and that Ocwen has attempted to keep a false lien on the property and attempted to collect a debt that is not owed to it.  The amended complaint alleges CBSK was not a member of MERS and that this voided any attempted assignment of the mortgage.  According to the amended complaint, defendants have no legitimate interest in the note or in the real property at which Cline resides.  Cline alleges that CBSK remains the true holder of the note.

Defendants filed a second motion to dismiss that reiterates the arguments made in the first motion and also raised the Rooker-Feldman doctrine as a basis for dismissal.  See Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 283 (2005) (discussing Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983) and stating that the doctrine precludes a federal district court from entertaining "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.").

The motion to dismiss recites the many court proceedings in which Cline has been involved. The Court may take judicial notice of these proceedings without converting the motion into one for summary judgment.  See Winget v. JP Morgan Chase Bank, N.A., 537 F.3d 565, 576 (6th Cir. 2008). The first proceeding is the foreclosure action to which the complaint refers as "fraudulent."  HSBC filed a foreclosure action in state court in March 2007 and obtained summary judgment against Cline in January 2008.  See HSBC Bank v. Cline, No. 07-cv-3604 (Franklin County Ct. C.P.).  The court specifically found that the mortgage and note were duly recorded and validly assigned to HSBC and

that Cline was in default, with over $430,000 plus interest due on the note.  Cline moved for relief from the foreclosure judgment, which was denied.

Cline filed a Chapter 13 bankruptcy petition in April 2008.  See In re Santana Cline, No. 2:08-bk-53519 (Bankr. S.D. Ohio).  A sheriff's sale that had been scheduled in the foreclosure action was withdrawn due to the bankruptcy filing.  After Cline's Chapter 13 case was dismissed in July 2008 for the debtor's failure to present a plan in a posture for confirmation, a second sheriff's sale was scheduled in the foreclosure action.  Cline then filed a Chapter 7 bankruptcy petition in October 2008.  See In re Santana Cline, No. 2:08-bk-60588 (Bankr. S.D. Ohio), causing the sheriff's sale to again be withdrawn.  Cline listed the real property as an asset and scheduled the mortgage as a secured debt.  She also filed a debtor's statement of intention to surrender the real property.  Her Chapter 7 case was discharged in February 2009 once the trustee and creditors determined that she had no further assets to administer.

Cline never surrendered the property.  After HSBC's loss mitigation attempts with Cline were unsuccessful, a sheriff's sale was scheduled for July 9, 2010.  On May 26, 2010 Cline filed in the foreclosure action a motion to stay the sale and a motion for relief from the judgment.  These motions were denied as untimely by the state court on June 29, 2010.

Cline filed another Chapter 13 petition on July 7, 2010, causing the sheriff's sale scheduled for July 9 to be withdrawn.  See In re Santana Cline, No. 2:10-bk-58115 (Bankr. S.D. Ohio).  Within this second Chapter 13 case, Cline initiated two adversary proceedings challenging the validity of the mortgage lien.  See Cline v. HSBC, et al., No. 2:10-ap-2482 (Bankr. S.D. Ohio) and Cline v. HSBC, et al., No. 2:10-ap-2618 (Bankr. S.D. Ohio).  The first adversary proceeding was voluntarily dismissed in November 2010 after defendants moved to dismiss.  The Chapter 13 case was dismissed in January 2011 upon the court's finding that the debtor's plan was not in posture for confirmation.  The second adversary proceeding was dismissed in September 2011 upon the court's finding that Cline did not intend to pursue prosecution of the matter.

The state court foreclosure action was reinstated following the dismissal of the second Chapter 13 case.  A sheriff's sale was scheduled for May 6, 2011.  Before the sale, Cline moved for relief from judgment and to stay the sale.  Both motions were denied as meritless.

On May 5, 2011, Cline filed a third Chapter 13 case, again causing the sheriff's sale to be withdrawn.  See In re Santana Cline, No. 2:11-bk-54893 (Bankr. S.D. Ohio).  And again Cline filed an adversary proceeding challenging HSBC's mortgage lien.  See Cline v. HSBC, et al., No. 2:11-ap-2336 (Bankr. S.D. Ohio).  The trustee moved to dismiss the Chapter 13 case because the debtor had

failed to prosecute the matter with a plan that was in a posture to be confirmed, because of the debtor's failure to provide information concerning her financial affairs, and because of the debtor's repeated filing of failed bankruptcy petitions.  The bankruptcy court granted the trustee's motion to dismiss on November 8, 2011.  In the same order, the court also held Cline in contempt of court for failing to comply with court orders and failing to appear at a show cause hearing.  The court barred Cline from filing a bankruptcy petition for a period of 2 years.  The court's order was affirmed on appeal.  See In re Santana Cline, No. 11-54893 (6th Cir. B.A.P.).  Following the affirmance on appeal, the bankruptcy court dismissed the adversary proceeding due to the dismissal of the underlying case.

Meanwhile in the state foreclosure action, HSBC petitioned on December 21, 2011 for a re-appraisal of the property and to schedule a sheriff's sale.  The petition was granted and a sheriff's sale was scheduled for March 30, 2012.

On February 21, 2012, Cline filed a quiet title action in state court, which again caused the sheriff's sale to be withdrawn.  See Cline v. MERS, et al., No. 12-cv-2287 (Franklin County Ct. C.P.)  The complaint alleged that the assignment of the mortgage was defective and invalid.  On February 20, 2013, the state court granted summary judgment to defendants on the basis of claim and issue preclusion, finding that her quiet title action sought to re-litigate matters that were raised or could have been raised in the foreclosure action.  Cline's appeal of the order was denied.

Cline initiated the action before this Court on April 25, 2013.  The matter is before the Court on defendants' August 5, 2013 motion to dismiss and on Cline's various motions to disqualify counsel, for an entry of default, to strike defendants' filings, and to "exclude improper character evidence."

In the state foreclosure action, HSBC petitioned the court on September 30, 2013 to schedule a sheriff's sale.  On the same day, Cline removed the foreclosure action to this Court, and the undersigned judge was assigned the removed case.  See HSBC v. Cline, No. 2:13-cv-978 (S.D. Ohio).  The magistrate judge issued a Report and Recommendation recommending that HSBC's motion to remand be granted because Cline had frivolously and untimely removed the case and that sanctions against Cline were warranted.  On December 2, 2013, the Court adopted the Report and Recommendation and remanded the matter to state court.

## II.      Motion to Dismiss Standard of Review

Federal Rule of Civil Procedure 8(a) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When considering a motion under Rule 12(b)(6) to dismiss a pleading for failure to state a claim, a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court should construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. Iqbal, 556 U.S. at 679; Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); Twombly, 550 U.S. at 555-56.

Despite this liberal pleading standard, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; see also Twombly, 550 U.S. at 555, 557 ("labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do," nor will "naked assertion[s]" devoid of "further factual enhancements"); Papasan v. Allain, 478 U.S. 265, 286 (1986) (a court is "not bound to accept as true a legal conclusion couched as a factual allegation"). The plaintiff must provide the grounds of his entitlement to relief "rather than a blanket assertion of entitlement to relief." Twombly, 550 U.S. at 556 n.3. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679.

When the complaint does contain well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. Though "[s]pecific facts are not necessary," Erickson, 551 U.S. at 93, and though Rule 8 "does not impose a probability requirement at the pleading stage," Twombly, 550 U.S. at 556, the factual allegations must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim. Iqbal,

556 U.S. at 678-79; Twombly, 550 U.S. at 555-56. This inquiry as to plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'– 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III.   Discussion

As defendants correctly observe, Cline's multitude of allegations and claims in this action stem from one common assertion – that the assignment of her mortgage after CBSK went defunct was invalid and defendants thus have no enforceable interest in the note or real property. See, e.g., Am. Compl., ¶ 23 (alleging that the promissory note "is still payable only to CBSK"). This assertion has been at the heart of Cline's filings in various court proceedings, as outlined above. Indeed, this assertion has been used at every turn and in every avenue available to Cline to avoid sale of the real property at which she resides. Cline has thwarted the sale of the property for over 5 years.

The court agrees with the defendants that Cline's claims suffer from several legal deficiencies. The doctrines of issue and claim preclusion prevent this Court from re-examining the issues resolved on summary judgment by the state court in the foreclosure action and from re-litigating the claims that were raised or could have been raised in that action.

> Under the doctrine of claim preclusion, a final judgment forecloses "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." New Hampshire v. Maine, 532 U.S. 742, 748, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). Issue preclusion, in contrast, bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment," even if the issue recurs in the context of a different claim. Id., at 748–749, 121 S.Ct. 1808. By "preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate," these two doctrines protect against "the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions." Montana v. United States, 440 U.S. 147, 153–154, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979).

Taylor v. Sturgell, 553 U.S. 880, 892 (2008). The large majority of issues and claims raised in Cline's complaint fit squarely within these doctrines, in that she alleges that the assignment of the mortgage was invalid and that defendants engaged in pre-foreclosure wrongdoing relating to the assignment of her mortgage. See Chapman v. PNC Bank, N.A., No. 1:11-cv-2229, 2012 WL 163040, at *4 (N.D. Ohio Jan. 18, 2012) (federal suit brought by mortgagor following state

foreclosure action was barred by claim preclusion because claims could have been filed as counterclaims).

To the extent that portions of Cline's claims may escape the preclusive effect of these doctrines – whether because certain allegations could be construed as relating to conduct occurring after the filing of the foreclosure action or because certain defendants here were not parties to the foreclosure action[1] – the court finds that these claims nonetheless must be dismissed.  For instance, the <u>Rooker-Feldman</u> doctrine prevents this court from exercising jurisdiction over any alleged claim of error in the state court decision.  <u>See</u> <u>Exxon Mobil</u>, 544 U.S. at 292.  The complaint is interspersed with allegations of improprieties that took place in the foreclosure action and resulted in an alleged fraudulent judgment.  The <u>Rooker-Feldman</u> doctrine forbids this Court from reviewing these claims and Cline's request for an injunction against enforcement of the foreclosure judgment must be denied.  <u>See</u> Am. Compl., p. 75.

Moreover, each of Cline's claims is barred by the applicable statute of limitations.  The allegations relate to conduct that occurred prior to March 12, 2009.[2]  This action was filed on April 25, 2013.  The FDCPA has a one-year statute of limitations and the Ohio Consumer Sales Practices Act has a two-year statute of limitations.  <u>See</u> 15 U.S.C. § 1692k(d); O.R.C. § 1345.10(C).  The statute of limitations for claims of fraud, misrepresentation, and fraud-based conspiracy is four years.  <u>See</u> O.R.C. § 2305.09(C); <u>Cramer v. Fairfield Med. Ctr.</u>, 182 Ohio App.3d 653, 667, 914 N.E.2d 447, 458 (Ohio Ct. App. 2009).  Lastly, the statute of limitations for unjust enrichment is six years from the date of the retention of a benefit conferred by plaintiff upon a defendant.  <u>See</u> O.R.C. § 2305.07; <u>Thomas v. Kramer</u>, 194 Ohio App.3d 70, 79, 954 N.E.2d 1235, 1242 (Ohio Ct. App. 2011); <u>Palm Beach Co. v. Dun & Bradstreet</u>, 106 Ohio App.3d 167, 175, 665 N.E.2d 718, 723 (Ohio Ct. App. 1995).  The complaint does not identify any benefit that Cline conferred upon defendants;

---

[1]  It should be noted however that that the privity requirement likely would be satisfied here because the relationships between HSBC (the foreclosure plaintiff) and nonparties MERS and Ocwen appear to fit within two exceptions to the rule against nonparty preclusion.  Defendants are alleged to have had a mutuality of interest in the foreclosure action, even allegedly conspiring to file that action to further their interests.  <u>See</u> <u>Taylor</u>, 553 U.S. at 895.  And Cline alleges that Ocwen conducted the foreclosure litigation on HSBC's behalf.  <u>Id</u>. (holding that a nonparty is bound by a judgment if it assumes control over the litigation in which the judgment was rendered).

[2]  The complaint alleges that defendants first attempted to assign the mortgage in April 2007 and later attempted to assign the mortgage in January 2009 and to record it on March 12, 2009.  Am. Compl., ¶ 24.

the state court found on summary judgment in the foreclosure action that the last mortgage payment Cline made was in October 2006.  Thus, the unjust enrichment claim is likewise time-barred.


**IV.     Conclusion**

For the reasons stated above, defendants' motion to dismiss the complaint is GRANTED (doc. 28).  Plaintiff's motions to disqualify counsel, for an entry of default, to strike defendants' filings, and to "exclude improper character evidence" (doc. 27, 30, 32) are DENIED as frivolous.

Cline is advised that the court will consider sanctions should she file post-judgment motions in this action that are frivolous and brought for purposes of delay, harassment, or imposing needless cost on defendants.  To avoid sanctions, Cline must demonstrate a legitimate basis in law and fact for the relief she seeks.


                                                          s/ James L. Graham
                                                          JAMES L. GRAHAM
                                                          United States District Judge


DATE: December 18, 2013